1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

STEVEN PAUL KOZOL,                    )
                                      )
          Petitioner,                 )          CASE NO.    C06-1074-MJP-MJB
                                      )
      v.                              )
                                      )
ALICE PAYNE,                          )          REPORT & RECOMMENDATION
                                      )
          Respondent                  )
_____)

17

INTRODUCTION AND SUMMARY CONCLUSION

18

19

20

21

22

23

24

        Petitioner Steven Kozol is a state prisoner who is currently incarcerated at the McNeil Island

Corrections Center in Steilacoom, Washington.  He seeks relief under 28 U.S.C. § 2254 from his

King County Superior Court convictions on charges of attempted murder in the first degree and

burglary in the first degree.  Respondent has filed an answer to the petition together with relevant

portions of the state court record.  Petitioner has filed a reply to respondent's answer.  The briefing

is now complete and this matter is ripe for review.[1]  Following careful consideration of the record,

25

26

_____

        [1]  Petitioner's briefing in this matter, when judged by any standard, must be deemed excessive.
Petitioner's memorandum in support of his petition is 95 pages in length.  Petitioner's response to

REPORT AND RECOMMENDATION
PAGE - 1

1   this Court concludes that petitioner's § 2254 petition should be denied and that petitioner's petition,

2   and this action, should be dismissed with prejudice.

3                              FACTUAL AND PROCEDURAL HISTORY

4        The Washington Court of Appeals, on direct appeal of petitioner's conviction, summarized

5   the facts of petitioner's crime as follows:

6

7            Steven Kozol and Thomas Wolter were housemates in Wolter's home from
         November 1999 to May 2000.  Wolter was financially stable, whereas Kozol seldom
8        worked.  Kozol owed three months' rent when he moved out of Wolter's home.

9            Six months later, on November 15, 2000, Wolter was violently attacked in his
         home by a man wearing a black ski mask over his head and face, leather gloves, and a
10       thick gray sweat suit.  Wolter fought his assailant in the upstairs office of his home
         where the initial attack occurred, then in the stairwell and at the bottom of the stairs,
11       then back upstairs at the doorway to Wolter's bedroom after Wolter ran upstairs and
         tried to barricade himself in the bedroom and the assailant returned up the stairs and
12       attempted to kick in the door, then back down the stairwell and into the lower part of
         the house where Wolter was finally able to break away and run to a neighbor's home.
13       In the course of the attack and the ensuing struggle, Wolter was shot with a taser
         gun, shot three times with a handgun, and threatened with a knife.
14

15           Wolter's neighbor called 911.  Police arrived quickly but were unable to
         locate the assailant.  Wolter was taken to Harborview Hospital where he was treated
16       for the gunshot wounds and for numerous lacerations requiring stitches.  Wolter was
         not able to identify his assailant, but he was able to describe the clothing worn by the
17       man, and gave police a general description of the man's height, weight, and build.  He
         also told police that when he was shot with the gun he heard a "popping" or "puff"
18       noise, and that the gun seemed to have something long attached to it.  This led police
         to believe that the gun had been equipped with a silencer.
19

20           The officers obtained a search warrant to search Wolter's home for evidence.
         They found no sign of forced entry.  They found bloodstains on the carpet and walls,
21       bullets and bullet holes, a wire from a taser gun, a taser barb on the jacket Wolter had

22

23   _____

24   respondent's answer is a staggering 196 pages.  The issues presented to this Court for review simply
     do not warrant the extraordinary number of pages petitioner has devoted to them.  However, rather
25   than delay this matter further by striking petitioner's responsive brief and requiring that he resubmit a
     more concise response, the Court has elected to proceed to disposition on the record as it currently
26   stands.

REPORT AND RECOMMENDATION
PAGE - 2

been wearing, and "AFIDS" on the floor of the office.  The acronym AFIDS stands for "anti-felon identification tags."  They are automatically deployed when a taser gun is fired, and they have a serial number on them that can be traced back to a specific taser gun.  In this case, the AFIDS were traced to a taser gun that had been purchased by Wolter's former housemate Steve Kozol, eight days before the attack, from a business called Spy Connection.  The physical description Wolter gave police of his attacker was similar to that of Kozol.

The bullets retrieved from the crime scene were found to have been shot from a 9 mm. semi-automatic or fully automatic pistol manufactured by SWD Company.  This company imprints the logo "Cobray" on the firearms that it manufactures.  Police subsequently found evidence that Kozol had purchased a 9 mm. Cobray handgun and a rapid-fire attachment for the gun.

Because the AFIDS had been traced to a taser gun purchased by Kozol, police promptly began watching him.  They saw him transfer a briefcase from his Audi vehicle into the trunk of a Mustang owned by his girlfriend.  They obtained multiple search warrants to search Kozol's residence, a storage facility that he rented, his Audi, and his girlfriend's Mustang.  In the Mustang, police found a briefcase containing Wolter's identification, several bank statements and blank checks belonging to Wolter, a newspaper article about the attack on Wolter, and a business card from the business called Spy Connection.  Wolter subsequently identified the briefcase as one belonging to him.

Police found a book entitled Quick and Dirty Home Made Silencers in Kozol's Audi.  They also found "smear transfer" bloodstains on the driver's seat of the car.  Swabs were taken, tested, and found to exactly match a blood sample taken from Wolter.

In Kozol's garage, police found parts that could be used to make home made silencers for guns using some of the methods described in the book on how to make silencers that was found in Kozol's Audi.  Detective Gulla, who helped execute the search warrant for Kozol's garage, subsequently testified that based on his training and experience with firearms and silencers, including actual experience in making a home made silencer, he immediately recognized the parts that he saw in the garage as those from which silencers can be made.  He also testified that these parts were located in close proximity to one another.

Kozol was charged with attempted murder in the first degree, and in the alternative, with attempted murder in the second degree.  He was also charged with burglary in the first degree.  Each of the charges included an allegation that Kozol was armed with a deadly weapon at the time of the crimes.

REPORT AND RECOMMENDATION
PAGE - 3

Kozol brought a motion to suppress evidence obtained from only one of the several search warrants that were issued, the warrant which authorized the search of Kozol's house, garage, and car.  The court denied the motion to suppress.

At trial, Kozol testified that although he had indeed purchased a taser gun, a 9 mm. Cobray handgun, and a rapid-fire attachment for the gun, these items had been stolen from his rented storage locker before the night of the crime against Wolter.  He testified that he had intended to give the taser gun to his girlfriend for Christmas, and that he had intended to use the handgun for target practice.  He testified that the blood on his car seat could have come from a rag that he had used to treat a foot injury Wolter received when he stepped on a nail, which rag he had tossed into his car.  He testified that Wolter gave him the briefcase, and that because the two had shared the office on the second floor of Wolter's home while they were housemates, Wolter's identification, blank checks, and banks statements, which predated the crime by several months, could have been accidentally swept into the briefcase when Kozol moved out.  He denied any involvement in the attack on Wolter.  Both he and his girlfriend testified that on the night of the attack, Kozol had been with the girlfriend at her home the whole time.  Kozol explained that the parts in his garage were for his hobby of building homemade rockets and for a business project of developing a new kind of air filter for diesel trucks.  He also claimed to be writing a novel that included spies and taser guns.

Wolter testified during rebuttal that he had no recollection of injuring his foot by stepping on a nail, or of giving Kozol his briefcase, but that the happening of either event was in the realm of possibility.

The jury found Kozol guilty of attempted first degree murder and first degree burglary, and also found that he had been armed with a deadly weapon at the time of each offense.  Kozol was sentenced within the standard range.

(Dkt. No. 11, Ex. 5 at 2-5.)

Petitioner appealed his conviction and sentence to the Washington Court of Appeals.  (*See id*., Exs. 2-4.)  On June 30, 2003, the Court of Appeals issued an opinion in which it affirmed petitioner's convictions. (*Id*., Ex. 5.)

Petitioner next filed a petition for review in the Washington Supreme Court.  Petitioner, through counsel, presented the following six issues to the Supreme Court for review:

1.      WPIC 100.01, which defines "attempt" for purposes of attempted crimes, actually defines a far more inchoate crime.  Rather than defining these crimes

REPORT AND RECOMMENDATION
PAGE - 4

as an attempt to commit a completed crime, it defines these crimes as an attempt to attempt a crime.  Did use of this instruction at petitioner's trial ease the prosecution's burden of proof and violate due process?

2.     The Court of Appeals concluded that any error in the definition of attempt was cured by subsequent instructions.  The Court's decision in this regard conflicts with prior precedent from this Court.  Is review therefore appropriate under RAP 13.4(b)(1)?

3.     Did the affidavit in support of a search warrant covering petitioner's house, garage, and car lack sufficient facts to establish a nexus between criminal activity, the items to be seized, and the places to be searched in violation of the Fourth Amendment to the United States Constitution and this Court's decision in State v. Thein, 138 Wn.2d 133, 977 P.2d 582 (1999)?

4.     Did the warrant contain an insufficiently particularized description of the property to be seized, thereby also violating petitioner's constitutional rights under the Fourth Amendment to the United States Constitution?

5.     Did the trial court err and violate petitioner's rights under the Fourth Amendment when it concluded that evidence not covered by the search warrant fell within the plain view exception to the warrant requirement?

6.     Is review of these Fourth Amendment issues appropriate under RAP 13.4(b)(3) because this case presents significant questions of federal constitutional law?

(Dkt. No. 11, Ex. 6 at 1-2.)

On February 4, 2004, the Washington Supreme Court denied petitioner's petition for review without comment.  (*Id.*, Ex. 7.)

In February 2005, petitioner filed a motion for relief from judgment in the King County Superior Court.  (*See id.*, Ex. 8.)  That motion was apparently transferred to the Washington Court of Appeals for consideration as a personal restraint petition.  The Court of Appeals issued an order dismissing petitioner's personal restraint petition on December 30, 2005.  (*Id.*, Ex. 9.)

In January 2006, petitioner filed a motion for discretionary review in the Washington Supreme Court challenging the Court of Appeals' dismissal of his personal restraint petition.  (Dkt.

No. 11, Ex. 10.) Petitioner presented the following issues to the Supreme Court for review:

    1)      Whether the Acting Chief Judge improperly dismissed the PRP as frivolous?

    2)      Whether the Acting Chief Judge committed obvious and probable error under RAP 13.5(b)(1) and (2) as to each claim raised in this PRP?

        a)      Whether Mr. Kozol was denied his right to due process under U.S. Const., amend. 14, where the State knowingly presented false evidence and testimony in the CrR 3.6 hearing?

        b)      Whether Mr. Kozol was denied effective assistance of counsel under U.S. Const. amend. 6, where defense counsel, in the CrR 3.6 hearing, failed to cross-examine the State's witness, to present evidence or testimony for the defense, or to identify the false evidence and testimony presented by the State?

        c)      Whether Mr. Kozol's right to an impartial jury under U.S. Const., amend 6 was violated, where three impliedly biased jurors sat upon his jury?

        d)      Whether Mr. Kozol was denied effective assistance of counsel under U.S. Const., amend. 6, where his lawyer failed to challenge biased jurors for cause?

        e)      Whether Mr. Kozol was denied due process because of cumulative error?

(Dkt. No. 11, Ex. 10 at 1-2.)

On April 5, 2006, the Supreme Court Commissioner issued a ruling denying review. (*Id.*, Ex. 11.) Petitioner moved to modify the commissioner's ruling, but that motion was also denied. (*Id.*, Exs. 12 and 13.) Petitioner now seeks federal habeas review of his convictions.

<u>GROUNDS FOR RELIEF</u>

Petitioner identifies seven grounds for relief in his federal habeas petition:

GROUND ONE:      Fabrication of physical evidence by police violated Kozol's right to a fair trial and due process.

REPORT AND RECOMMENDATION
PAGE - 6

GROUND TWO:        Kozol was denied his right to due process when the state knowingly used false testimony and evidence against him.

GROUND THREE:    Kozol was denied effective assistance of counsel when counsel failed to identify or challenge the State's false testimony and evidence.

GROUND FOUR:        Kozol's rights to due process were violated by the State's failure to disclose exculpatory evidence.

GROUND FIVE:        Kozol argues that even if any one of the above violations of his rights don't warrant relief, the cumulative effect of them all is so prejudicial as to require reversal.

GROUND SIX:        Kozol was denied his right to a fair trial by an impartial jury.

GROUND SEVEN:    Defense counsel was ineffective in failing to seek to excuse biased jurors.

(Dkt. No. 1 at 6, 7, 9, 11, 17, 18, and 19.)

DISCUSSION

Respondent asserts in her answer to petitioner's federal habeas petition that petitioner failed to properly exhaust his first, fourth and fifth grounds for relief, and that these claims are now procedurally barred. Respondent argues that petitioner's remaining claims fail on the merits. Petitioner argues, with respect to his first ground for relief, that he properly exhausted the claim by presenting it to the state courts on direct appeal and in his personal restraint proceedings. Petitioner concedes that he failed to properly exhaust his fourth and fifth grounds for relief in the state courts, but argues that his failure to exhaust should be excused. Petitioner vigorously argues the merits of each of his individual claims.

Exhaustion and Procedural Default

The United States Supreme Court has made clear that state remedies must first be exhausted on all issues raised in a federal habeas corpus petition. *Rose v. Lundy*, 455 U.S. 509 (1982); 28

REPORT AND RECOMMENDATION
PAGE - 7

U.S.C. §2254(b), (c).  Exhaustion must be shown either by providing the highest state court with the opportunity to rule on the merits of the claim or by showing that no state remedy remains available. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996)(citations omitted).

The exhaustion requirement is a matter of comity, intended to afford the state courts "the first opportunity to remedy a constitutional violation." *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981).  A federal habeas petitioner must provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing on his constitutional claim.  *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982).  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.  *Harless*, 459 U.S. at 6.  The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims.  *Id.*

1.    Ground One

Petitioner asserts in his first ground for federal habeas relief that during the execution of a search warrant at his residence, the police gathered items from throughout his garage and reconfigured them so that they could be seized under the plain view doctrine.  The items at issue were items which the prosecution argued could be used to make a silencer for a gun.  Petitioner contends that the fabrication of physical evidence by police violated his right to a fair trial and to due process.

Respondent argues that this claim has not been properly exhausted because it was not properly presented to the Washington Supreme Court for review.  Petitioner asserts in his petition that he presented this claim to the state courts on direct appeal and on collateral review.  (*See* Dkt. No. 1 at 6-7.)  The record does not support petitioner's assertion.

REPORT AND RECOMMENDATION
PAGE - 8

The record reflects that on direct appeal petitioner presented to the Court of Appeals in his pro se supplemental brief a claim similar to his first ground for federal habeas relief.  However, petitioner did not specifically argue on appeal that the fabrication of evidence violated his due process rights.  Instead, he argued that his Fourth Amendment rights were violated when the police exceeded the scope of the warrant.  (Dkt. No. 11, Ex. 3 at 5-27.)  Included in petitioner's argument in support of his Fourth Amendment claim was an assertion that the police manipulated the evidence and then improperly seized evidence which did not fall within the scope of the warrant or the plain view exception to the warrant requirement. (*Id.*)

Petitioner also alleged in his pro se supplemental brief that the trial court erred by allowing seized evidence to be admitted under the plain view doctrine.  (*Id.*, Ex. 3 at 28-45.)  In support of that claim, petitioner once again argued that the police had improperly manipulated evidence.  (*Id.*)  However, nowhere in his briefing did petitioner ever present to the Court of Appeals the precise claim presented here; *i.e.,* that the fabrication of physical evidence by the police violated his due process rights.  Petitioner also failed to present any such claim to the Washington Supreme Court on direct appeal.  Thus, this Court concludes that petitioner's first ground for federal habeas relief was not properly exhausted on direct appeal.

The record also reflects that petitioner failed to properly exhaust his first ground for relief on collateral review.  A review of petitioner's personal restraint petition, and his motion for discretionary review, reveals that petitioner made allegations therein about Detective Gulla moving evidence to satisfy the plain view requirement.  (*Id.*, Ex. 8 at 15-16; Ex. 10 at 27-29.)  However, these allegations were made in petitioner's arguments in support of his claim that his counsel rendered ineffective assistance when he failed to challenge the false testimony of Detective Gulla at

REPORT AND RECOMMENDATION
PAGE - 9

the pretrial suppression hearing.  (*See* Dkt. No. 11, Ex. 8 at 15-16; Ex. 10 at 27-29.)  Petitioner did

not present to the state courts on collateral review any independent due process claim regarding

manipulation of evidence, or any argument specific to the due process claim presented in his first

ground for federal habeas relief.  Accordingly, this Court concludes that petitioner failed to properly

exhaust his first ground for relief on collateral review as well.

       2.    <u>Grounds Four and Five</u>

       Petitioner asserts in his fourth ground for federal habeas relief that his due process rights

were violated by the state's failure to disclose exculpatory information.  (Dkt. No. 1 at 11.)  He

asserts in his fifth ground for relief that the cumulative effect of the alleged constitutional violations

was so prejudicial as to warrant reversal.  (*See id*. at 17.)   Petitioner concedes in his petition that he

did not properly exhaust these claims.  (*See id*. at 11-12, and 17.)  He argues, however, that his

failure to exhaust should be excused.  (*See id*., Supporting Brief at 56-63; *see also* Dkt. No. 15 at

117-129 and 157-160.)  As petitioner concedes that these claims have not been properly exhausted,

the Court need not address respondent's arguments to that effect.  The Court will address below

petitioner's claim that his failure to exhaust should be excused.

       3.    <u>Cause and Prejudice</u>

       When a petitioner fails to exhaust his state court remedies and the court to which petitioner

would be required to present his claims in order to satisfy the exhaustion requirement would now

find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas

review.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

       Respondent argues that petitioner, having failed to properly exhaust his first, fourth, and fifth

grounds for relief, would now be barred from presenting those claims to the state courts under RCW

REPORT AND RECOMMENDATION
PAGE - 10

10.73.090 (time bar), and RCW 10.73.140 (successive petition bar).  RCW 10.73.090(1) provides

that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within

one year after the judgment becomes final.  Petitioner's direct appeal was finally resolved in February

2004 when the Washington Supreme Court denied petitioner's petition for review.  (*See* Dkt. No.

11, Ex. 7.)  It therefore appears that petitioner would be time barred from presenting his

unexhausted claims to the state courts.  In addition, because petitioner has previously presented a

personal restraint petition to the state courts, the state courts are unlikely to entertain another

personal restraint petition from petitioner.  *See* RCW 10.73.140.

Accordingly, this Court concludes that petitioner has procedurally defaulted on his first,

fourth, and fifth grounds for federal habeas relief.  When a state prisoner defaults on his federal

claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas

review of the claims is barred unless the prisoner can demonstrate cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. at

750.  Petitioner argues that he can demonstrate cause and prejudice for his failure to exhaust his

fourth and fifth grounds for relief.[2]

To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that

some objective factor external to the defense prevented him from complying with the state's

procedural rule.  *Id*. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To show

"prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his

---

[2]  Petitioner believes he has properly exhausted his first ground for relief and vigorously argues that position in his briefs.  He presents no alternative argument that his failure to exhaust should be excused.

REPORT AND RECOMMENDATION
PAGE - 11

trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v.*

*Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  Only in an "extraordinary case" may the

habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental

miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant

who is actually innocent.  *Murray v. Carrier*, 477 U.S. at 495-96.

Petitioner argues that his failure to exhaust his fourth and fifth grounds for relief should be

excused because the discovery records upon which these claims are based were withheld from trial

counsel and were not provided to petitioner until February 4, 2005, despite efforts by an attorney

working on his behalf to obtain those records.  Petitioner asserts that the deadline for filing his

collateral attack in the state courts was February 24, 2005, and that his inability to obtain the files

prior to February 4, 2005, left him insufficient time to review the materials and develop his claim that

the state failed to disclose exculpatory evidence and present it to the state courts.  (Dkt. No. 1,

Supporting Brief at 58-62.)

The record before this Court appears to support petitioner's claim that he did not receive

portions of the state court record relevant to his claim that the state failed to disclose exculpatory

evidence; *i.e.*, police reports, until a short time before his personal restraint petition was due.

However, the record suggests that petitioner certainly had possession of the documents necessary to

identify the claims asserted in his fourth and fifth grounds for federal habeas relief for a substantial

period of time before the Court of Appeals dismissed his personal restraint petition on December 30,

2005.  Petitioner fails to explain why he made no attempt to amend his petition to present these

claims in his personal restraint proceedings.  In fact, the attorney who assisted petitioner in obtaining

REPORT AND RECOMMENDATION
PAGE - 12

the records suggested to petitioner that he should attempt to do just that; *i.e.*, amend his petition, if the records forwarded to petitioner revealed any new claims to him. (*See* Dkt. No. 1, Supporting Brief, Ex. 15-L.) This Court is simply not satisfied that petitioner could not have, through the exercise of reasonable diligence, presented his fourth and fifth grounds for federal habeas relief to the state courts on collateral review.  Accordingly, this Court concludes that petitioner has not established cause for his failure to exhaust his state court remedies with respect to these two grounds for relief.

Because petitioner has not met his burden of demonstrating cause for his procedural default, this Court need not determine whether petitioner carried his burden of showing actual prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).  In addition, petitioner makes no colorable showing of actual innocence. Petitioner therefore fails to demonstrate that his fourth and fifth grounds for federal habeas relief are eligible for federal habeas review.  As noted above, petitioner makes no effort to demonstrate cause and prejudice for his failure to exhaust his first ground for relief and, thus, that claim is also ineligible for federal habeas review.  Petitioner's federal habeas petition should therefore be dismissed as to his first, fourth, and fifth grounds for relief.

<u>Standard of Review for Exhausted Claims</u>

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (emphasis added).     Under the

REPORT AND RECOMMENDATION
PAGE - 13

"contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id*.  The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

Presentation of False Evidence

Petitioner asserts in his second ground for federal habeas relief that his due process rights were violated when the state knowingly used false evidence and testimony against him.  Petitioner contends that the police gave false testimony at a pretrial suppression hearing in order to get otherwise inadmissible evidence admitted.  At issue here are items of evidence which, according to the testimony of Detective Denny Gulla at the pretrial hearing, could be used to make a homemade silencer. Petitioner argues that the state failed to correct the false testimony, that the state proceeded to rely on the false evidence during the trial, and that the state presented testimony during the course of the actual trial which impeached the pretrial testimony upon which the false evidence was admitted, and yet made to no attempt to bring this to the attention of the trial court.

It is well established that a conviction obtained by the knowing use of false evidence is fundamentally unfair, and that such a conviction may not stand under the Fourteenth Amendment if

there is any reasonable likelihood that the false testimony affected the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264, 269 (1950). *See also*, *United States v. Agurs*, 427 U.S. 97, 103 (1976).

The Court of Appeals rejected petitioner's claim regarding presentation of false evidence in petitioner's personal restraint proceedings. The Court of Appeals explained its ruling as follows:

> Kozol first contends that his due process rights were violated when the State presented false testimony at the suppression hearing. He maintains Detective Gulla falsely testified that various items that could be used to construct a silencer were found in Kozol's garage "in close proximity." Kozol has also submitted evidence suggesting that two of these items – pretrial exhibits #3 and #8 – were not found in his garage, but rather in the trunk of his car during a different search.

> The victim in this case had provided information to investigating officers suggesting that the assailant's firearm had been fitted with a silencer. At the suppression hearing, Det. Gulla testified he immediately recognized various items found in Kozol's garage during the execution of a search warrant, including wire screens, aluminum tubing, a wooden board with round marks matching the tubing, washers or "wipes" (Exhibit #3), and a metal tap (exhibit #8), as components of a homemade silencer. The trial court concluded that the items did not fall within the scope of the search warrant, but were admissible under the "plain view" doctrine.

> The crux of Kozol's argument appears to be that Det. Gulla's testimony placing exhibits #3 and #8 in the garage was critical to the trial court's pretrial decision to admit the alleged silencer components found in the garage. Kozol concedes that Det. Gulla's trial testimony was accurate.

> A conviction obtained through the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is a reasonable likelihood that the allegedly false testimony affected the jury's judgment. In re Pers. Restraint of Benn, 135 Wn.2d 868, 936-37, 952 P.2d 116 (1998) (citing United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)). A court need not resolve the issue of whether the State knowingly used perjured testimony unless there is a reasonable likelihood that the testimony affected the jury's verdict. In re Benn, 134 Wn.2d at 937.

> Kozol does not allege that exhibits #3 and #8 were not admissible merely because they were found in the trunk of his car rather than in his garage. Moreover, the other items found in Kozol's trunk included various parts that were similar to those found in the garage and that could be used to construct a silencer. The court also admitted a book found in the trunk entitled "Quick and Dirty Homemade Silencers." Consequently, the location of exhibits #3 and #8 did not materially affect

REPORT AND RECOMMENDATION
PAGE - 15

the nature of the evidence before the jury on the issue of the silencer components.

Kozol claims that the trial court would not have admitted any of the silencer components from the garage had it known exhibits #3 and #8 were found in the trunk of Kozol's car. But there is no dispute that Det. Gulla found a wire screen, metal tubing, and a wooden board with round marks corresponding to the tubing in Kozol's garage and that these parts could be used to construct a silencer. Kozol makes no showing that these items would not have been admitted under the "plain view" doctrine.

In any event, even exclusion of all of the silencer components found in the garage would not have affected the outcome of the case. First, as already indicated, similar silencer components were found in the trunk of Kozol's car, along with a manual on how to build silencers. Kozol has not challenged admission of this evidence. Second, Kozol testified that he had undertaken research into silencers and admitted that he knew how to build one.

Finally, contrary to Kozol's assertion, the alleged silencer parts were not a major part of the State's case. A neighbor reported seeing Kozol drive away from the victim's home on the afternoon of the assault. The victim's blood, which had been spattered throughout the home during the assault, was found on the seat of Kozol's car. A taser gun used during the attack was purchased by Kozol eight days earlier. Bullets found at the scene matched the type of firearm that Kozol owned. A briefcase containing the victim's identification, bank statements, and blank checks was found in a car belonging to Kozol's girlfriend.

In sum, the independent evidence of Kozol's guilt was overwhelming. Kozol has failed to demonstrate any likelihood the alleged knowingly false testimony affected the jury's decision. See In re Benn, 134 Wn.2d at 938.

(Dkt. No. 11, Ex. 9 at 2-4.)

The Washington Supreme Court found no error in the Court of Appeals' decision. The Supreme Court Commissioner explained as follows:

Mr. Kozol mainly argues that a police detective falsely testified at a pretrial suppression hearing that items found in Mr. Kozol's garage while executing a search warrant, which the detective believed "as a whole" constituted components of a homemade silencer, were in "close proximity" with one another, thus leading the trial court to rule that they were lawfully seized under the "plain view" exception to the

REPORT AND RECOMMENDATION
PAGE - 16

warrant requirement.[3]  Mr. Kozol also asserts that additional items introduced at the hearing as having been found in the garage were in fact found later in the trunk of his car.

But the acting chief judge noted that Mr. Kozol did not dispute the admissibility of the items found in his trunk nor did he deny that they also constituted components of a homemade silencer.[4]  Nor did Mr. Kozol dispute the admissibility of a book on how to build silencers found in his trunk.  The acting chief also observed that Mr. Kozol himself testified that he had undertaken research on how to build a silencer.  And finally, the acing chief judge found any error harmless because the independent evidence of guilt was overwhelming.  In his motion for discretionary review, Mr. Kozol focuses on the claimed perjury of the police detective, but he does not shown that the acting chief judge erred in finding no prejudice.  *See In re Pers. Restraint of Benn*, 134 Wn.2d 868, 937-38, 952 P.2d 116 (1998) (must demonstrate reasonable likelihood that claimed false testimony affected verdict).

(Dkt. No. 11, Ex. 11 at 1-2.)

Petitioner makes no showing that the conclusion of the state courts with respect to his claim of false testimony was contrary to, or constituted an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  While the record before this Court supports petitioner's contention that Detective Gulla's pretrial testimony was erroneous, this record does not reveal whether Detective Gulla's testimony was intentionally misleading or just carelessly inaccurate.  The record does suggest, however, that both Detective Gulla and the prosecutor who elicited Detective Gulla's testimony at the suppression hearing should have known that the testimony was erroneous.  Nonetheless, petitioner can only obtain relief in these proceedings if he

---

[3] [Supreme Court footnote 1] The trial court determined that the items were not otherwise within the scope of the search warrant.

[4] [Supreme Court footnote 2] The silencer issue was relevant because the victim had provided information to police suggesting the assailant's firearm had been fitted with a silencer.

REPORT AND RECOMMENDATION
PAGE - 17

can establish that the false testimony *affected* the jury's judgment.  Petitioner makes no such showing.

Petitioner fails to demonstrate that evidence of the silencer components would not have been deemed admissible even absent the errors in Detective Gulla's pretrial testimony.  Moreover, the silencer evidence, though relevant, was not the most compelling part of the state's case against petitioner.  At trial, the state established through testimony and through documentary evidence that petitioner had purchased a Taser a few days before the attack on Thomas Wolter (*see* Dkt. No. 11, Ex. 18 at 166-176; Ex. 20 at 67-71), and physical evidence found at the scene connected petitioner's Taser to the attack (*see id.*, Ex. 18 at 77-86, 141-157).  Bullets found at the scene of the crime also matched the type of gun owned by petitioner.  (*See id.*, Ex. 19 at 89-91; Ex. 20 at 77-79.) Moreover, the state established that the victim's blood was found on the seat of petitioner's car (*see id.*, Ex. 18 at 53-58; Ex. 19 at 47-48), and that financial documents belonging to the victim were found in a briefcase in petitioner's car.  (*Id.*, Ex. 17. at 63.)

While petitioner offers detailed explanations in these proceedings as to why this evidence is not entitled to the weight assigned it by the prosecution, petitioner fails to demonstrate to this Court that there is any reasonable likelihood that the false testimony of Detective Gulla at the pre-trial suppression hearing ultimately affected the jury's verdict.  Accordingly, petitioner's federal habeas petition should be denied with respect to his second ground for federal habeas relief.

### Ineffective Assistance of Counsel

Petitioner asserts in his third ground for relief that he was denied his right to the effective assistance of counsel when his trial counsel failed to identify or challenge the state's false testimony and evidence at the pretrial suppression hearing.

REPORT AND RECOMMENDATION
PAGE - 18

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. at 688, 691-92.

When considering the first prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Id*. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. The Ninth Circuit has made clear that "[a] fair assessment of attorney performance requires that every effort by made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland v. Washington*, 466 U.S. at 689).

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Strickland v. Washington*, 466 U.S. at 693. The petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id*.

The Court of Appeals rejected petitioner's ineffective assistance of counsel claim in petitioner's personal restraint proceedings. The Court of Appeals explained its conclusion as follows:

REPORT AND RECOMMENDATION
PAGE - 19

1

2          Kozol next contends that he was denied effective assistance when defense
counsel failed to cross-examine Det. Gulla or otherwise challenge his allegedly false

3    testimony at the suppression hearing.  He maintains that had defense counsel
conducted the same cross-examination at the suppression hearing as he did later at

4    trial, Det. Gulla would have been impeached, and the trial court would have granted
the suppression motion as to those items allegedly found in "plain view" in Kozol's

5    garage.  A petitioner alleging ineffective assistance of counsel must demonstrate both
(1) that defense counsel's representation fell below an objective standard of

6    reasonableness and (2) resulting prejudice.  See Strickland v. Washington, 466 U.S.
668, 687, 104 C. Ct. 2052, 80 L. Ed. 2d 91984); see also State v. Thomas, 109

7    Wn.2d 222, 743 P.2d 816 (1987).  There is a strong presumption that the defendant
received effective representation.  State v. Brett, 126 Wn.2d 136, 198, 892 P.2d 29

8    (1995).  If the petitioner has failed to demonstrate resulting prejudice, a court need
not determine whether counsel's performance was deficient.  In re Pers. Restraint of

9    Davis, 152 Wn.2d 647, 709, 101 P.3d 1 (2004).

10         As already indicated, silencer components and a manual for building
homemade silencers were found in the trunk of Kozol's car as well as in his garage.

11   Kozol has not challenged the admission of that evidence.  Consequently, exclusion of
all of the items found in plain view in Kozol's garage would not have had any

12   meaningful effect on the substance of the silencer evidence admitted at trial.
Moreover, the silencer evidence was not a significant part of the State's case.  The

13   remaining independent evidence of Kozol's guilt was overwhelming.  Accordingly,
Kozol has failed to demonstrate any prejudice resulting from counsel's alleged

14   deficient performance at the suppression hearing.[5]

15

16   (Dkt. No. 11, Ex. 9 at 4-5.)

17       Petitioner's makes no showing that this conclusion of the Court of Appeals was contrary to,

18   or constituted an unreasonable application of, clearly established federal law as determined by the

19   United States Supreme Court.[6]  The Court of Appeals applied the correct standard in evaluating

20

21

22

23        [5] [Court of Appeals' footnote 1] Kozol also alleges that Det. Gulla moved or manipulated the

24   items found in his garage in order to satisfy the plain view requirements.  But he has not submitted any
evidence that supports these assertions.

25

26        [6] The Washington Supreme Court Commissioner did not address petitioner's ineffective
assistance of counsel claim in his ruling denying petitioner's motion for discretionary review.

REPORT AND RECOMMENDATION
PAGE - 20

petitioner's ineffective assistance of counsel claim and reasonably concluded that petitioner had demonstrated no prejudice.

The record before this Court reveals that petitioner's counsel did not cross-examine Detective Gulla at the pretrial suppression hearing, but that he did cross-examine him at trial and elicited testimony which might have been relevant to the suppression issues considered pretrial. (*See* Dkt. No. 11, Ex. 17 at 97-106.)  The record does not reveal why counsel did not further challenge the admission of the evidence which petitioner sought to suppress pretrial.  However, there is insufficient evidence in the record to clearly establish that counsel's performance was deficient in this regard.  And, more significantly, petitioner has made no showing of prejudice.  This Court explained above its reasons for concluding that there is no reasonable likelihood that the false testimony presented by the prosecution in the pretrial suppression hearing affected the judgment of the jury.  The Court necessarily concludes, for the same reasons, that petitioner was not prejudiced by the alleged deficiencies in his counsel's performance.  Accordingly, petitioner's federal habeas petition should be denied with respect to petitioner's third ground for federal habeas relief.

<u>Juror Impartiality</u>

Petitioner asserts in his sixth ground for relief that he was denied his right to a fair trial by an impartial jury when three of the seated jurors were either victims of crimes similar to those petitioner was on trial for, or had close family members who had committed such crimes, thus creating implied bias.  Petitioner also asserts, in his seventh ground for relief, that his counsel rendered ineffective assistance when he failed to seek to excuse the allegedly biased jurors for cause.  The jurors identified by petitioner in these claims include one juror who had been the victim of a residential burglary, one juror who had had his boat shed broken into and whose ex-son-in-law was in prison

REPORT AND RECOMMENDATION
PAGE - 21

for killing his drug supplier, and one juror whose ex-husband had been convicted of stealing checks from mail boxes.

It is well established that a criminal defendant has a right to a trial before "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961).  However, the Supreme Court explained in *Irvin* that

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. at 723.

The relevant question is whether the jurors had "such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035 (1984) (citing *Irvin*, 366 U.S. at 723).  The burden is on the defendant to establish the actual bias of a juror. *Smith v. Phillips*, 455 U.S. 209, 215-17 (1982).

The Supreme Court has acknowledged that the bias of a particular juror may be actual or implied. *See United States v. Wood*, 299 U.S. 123, 133 (1936).  *See also*, *Smith v. Phillips*, 455 U.S. at 214-215 and 221-224 (O'Connor, J., concurring); *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556-557 (1984) (Blackmun, Stevens, O'Connor, JJ., concurring). However, the Supreme Court has never specifically identified what standard should be applied in evaluating claims of implied jury bias and, in fact, has indicated only that a finding of implied jury bias should be reserved for extraordinary cases.[7]  *See id*.

_____

[7]  Justice O'Connor, in her concurring opinion in *Smith v. Phillips*, 455 U.S. at 222, did identify some examples of circumstances which might justify a finding of implied bias, including circumstances where there is a revelation that a juror is an employee of the prosecuting agency, a juror

REPORT AND RECOMMENDATION
PAGE - 22

In petitioner's personal restraint proceedings, the state courts rejected petitioner's claims that he was denied an impartial jury and that his counsel rendered ineffective assistance when he failed to challenge three jurors for cause.  The Court of Appeals explained its conclusion as follows:

> Kozol next contends that he was denied an impartial jury because defense counsel failed to challenge three jurors for cause.  Bias, either actual or implied, is a basis for a challenge for cause.  See RCW 4.44.170.  Kozol does not identify any statement in the record or other evidence suggesting that these jurors had an actual bias.  Rather, he asserts they should be conclusively presumed to have an "implied bias" because they disclosed they had been the victim of a burglary in the past or had a family member who had been convicted of a crime.
>
> But these circumstances do not fall within those constituting an implied bias under RCW 4.44.180.  Nor has Kozol cited any Washington authority suggesting that the trial court must conclusively presume bias under such circumstances.  Finally, federal authority cited by Kozol is not controlling and is, in any event, factually distinguishable.  See, e.g., United States v. Gonzalez, 214 F.3d 1109 (9th Cir. 2000) (juror repeatedly responded equivocally when asked if she could be fair); United States v. Eubanks, 591 F.2d 513 (9th Cir. 1979) (juror failed to disclose material information in response to question); United States v. Torres, 128 F.3d 38 (2nd Cir. 1997) (juror disclosed participating in activity that was very similar to charged offense).
>
> As the petitioner, Kozol bears the burden of demonstrating that any error "worked to his actual and substantial prejudice, even if the error could not have been considered harmless beyond a reasonable doubt on direct review."  In re Pers. Restraint of Smith, 117 Wn. app. 846, 859, 73 P.3d 386 (2003).  Nothing in the record suggests that any of the challenged jurors were unable to try the issues impartially.  Because Kozol has made no showing that a challenge for cause would have been granted, he cannot demonstrate prejudice from counsel's alleged deficient performance.  See In re Pers. Restraint of Lord, 123 Wn.2d 296, 309, 868 P.2d 835 (1994).

(Dkt. No.11, Ex. 9 at 5-6.)

The Washington Supreme Court agreed with the conclusion of the Court of Appeals.  The Supreme Court Commissioner briefly explained his conclusion as follows:

---

was a close relative of one of the participants in the trial or the criminal transaction, or a juror was a witness or otherwise involved in the criminal transaction.

REPORT AND RECOMMENDATION
PAGE - 23

1

2          Mr. Kozol also argues that three jurors were biased because two were victims
   of past burglaries and one was married to a person convicted of theft and forgery.
3   But Mr. Kozol demonstrates no actual bias, nor do these circumstances give rise to
   implied bias.

4   (Dkt. No. 11, Ex. 11 at 2.)

5          As noted above, the United States Supreme Court has not identified any standard for

6   evaluating claims of implied bias.  Thus, it cannot be said that the conclusion of the state courts,

7   which was based on state statutory law, is contrary to any clearly established federal law as

8
   determined by the Supreme Court.  Even if this Court were to apply the relatively generic
9
   "extraordinary case" standard suggested in the concurring opinions in *Smith* and *McDonough*, none
10
   of the circumstances presented by this case can reasonably be considered so extreme as to warrant a
11
   finding of implied bias.[8]  Moreover, as noted by the state courts, petitioner makes no showing that
12

13   any of the jurors identified in his claims were unable to try the issues impartially.  Petitioner therefore

14   fails to demonstrate that he was prejudiced by his counsel's failure to challenge these jurors for

15   cause.

16
          As the state courts reasonably concluded that petitioner had not demonstrated any prejudice
17

18   _____

19      [8] Petitioner directs this Court's attention to a Ninth Circuit case, *United States v. Gonzalez*,
20   214 F.3d 1109 (9th Cir. 2000), in which the court identified the following standard to be applied in
   cases presenting the question of implied bias:
21
        [W]e have held that prejudice is to be presumed where the relationship between a
22        prospective juror and some aspect of the litigation is such that it is highly unlikely that
        the average person could remain impartial in his deliberations under the circumstances.
23        We have also stated that the relevant question is whether [the] case present[s] a
        relationship in which the potential for substantial emotional involvement, adversely
24        affecting impartiality, is inherent.

25   *Gonzalez*, 214 F.3d at 1112.  However, even under this standard petitioner cannot prevail in these
26   proceedings.

REPORT AND RECOMMENDATION
PAGE - 24

as a result of counsel's failure to challenge the three jurors for cause, and that petitioner had not presented any basis for a finding of either actual or implied bias, petitioner's sixth and seventh grounds for federal habeas relief should be denied.

CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be denied and that the petition and this action be dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this   4th   day of May, 2007.

Monica J. Benton
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 25